UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRYAN RYNIKER, IN HIS CAPACITY AS LITIGATION ADMINISTRATOR OF THE POST-CONFIRMATION ESTATES OF DÉCOR HOLDINGS, INC., *et al.*,<br>　　　　　Plaintiff-Appellant,<br>　v.<br>BRAVO FABRICS and ROSENTHAL & ROSENTHAL, INC.,<br>　　　　　Defendant-Appellees. | **MEMORANDUM & ORDER**<br><br>22-CV-00903 (HG) |
| BRYAN RYNIKER, IN HIS CAPACITY AS LITIGATION ADMINISTRATOR OF THE POST-CONFIRMATION ESTATES OF DÉCOR HOLDINGS, INC., *et al.*,<br>　　　　　Plaintiff-Appellant,<br>　v.<br>P. KAUFMANN, INC.,<br>　　　　　Defendant-Appellees. | 22-CV-00905 (HG) |
| BRYAN RYNIKER, IN HIS CAPACITY AS LITIGATION ADMINISTRATOR OF THE POST-CONFIRMATION ESTATES OF DÉCOR HOLDINGS, INC., *et al.*,<br>　　　　　Plaintiff-Appellant,<br>　v.<br>SWAVELLE / MILL CREEK FABRICS, INC. and ROSENTHAL & ROSENTHAL, INC.,<br>　　　　　Defendant-Appellees. | 22-CV-00916 (HG) |

**HECTOR GONZALEZ**, United States District Judge:

Plaintiff-Appellant Bryan Ryniker ("Plaintiff") in his capacity as the Litigation Administrator of the Post-Confirmation Estates of Décor Holdings, Inc., *et al.* (the "Debtors") commenced the above-captioned appeals on April 20, 2022, which arise from a bankruptcy proceeding in the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court"). Plaintiff appeals an order entered by the Bankruptcy Court granting summary judgment in favor of Defendant-Appellees (i) Bravo Fabrics and Rosenthal & Rosenthal, Inc., (ii) P. Kaufmann, Inc. and (iii) Swavelle / Mill Creek Fabrics, Inc. and Rosenthal & Rosenthal, Inc. ("Defendants") in a preference avoidance dispute under 11 U.S.C § 547 of the United States Bankruptcy Code. The appeals against the three sets of Defendants were docketed in this Court separately: the first under case number 22-cv-00903; the second under case number 22-cv-00905; and the third under 22-cv-00916. The Court consolidates these actions exclusively for purposes of this Memorandum and Order. *See* Fed. R. Civ. P. 42(a) ("If actions before the court involve a common question of law or fact, the court may . . . consolidate the actions . . . or issue any other orders to avoid unnecessary cost or delay.").

Plaintiff commenced preference actions against: (i) Defendants Bravo Fabrics and Swavelle / Mill Creek Fabrics, Inc. on August 25, 2020, and (ii) Defendants P. Kaufmann Inc. and Rosenthal & Rosenthal, Inc., on February 21, 2021. Defendants filed motions for summary judgment asserting the affirmative defenses of ordinary course of business and contemporaneous exchange for new value pursuant to 11 U.S.C. § 547(c)(2) on August 31, 2021. Plaintiff filed oppositions and cross-motions for summary judgment on September 30, 2021. After hearing oral arguments on all of the motions, the Bankruptcy Court directed the parties to file supplemental briefing regarding the ordinary course of business defense and reopened discovery

with respect to the new value defense. On February 3, 2022, the Bankruptcy Court issued an opinion concluding that all of the payments made by Defendants during the preference period were within the parties' ordinary course of business, which was followed by an order dated February 9, 2022, dismissing Plaintiff's claims for the reasons described in the opinion (the "Bankruptcy Order"). Plaintiff appeals the Bankruptcy Order and Defendants oppose the appeal.[1] *See* ECF Nos. 7, 8, 9.

For the reasons set forth below, the Court affirms the Bankruptcy Order.

## BACKGROUND

On August 25, 2020 and February 12, 2021, Plaintiff filed complaints in the Bankruptcy Court seeking to recover: (i) $60,648.23 in payments made by the Debtors to Defendants Bravo Fabrics and Rosenthal & Rosenthal, Inc.; (ii) $115,166.78 in payments made by the Debtors to Defendants Swavelle / Mill Creek Fabrics, Inc. and Rosenthal & Rosenthal, Inc.; and (iii) $65,052.81 in payments made by the Debtors to Defendant P. Kaufmann Inc., in exchange for Defendants' goods and services during the 90-day period before the Debtors filed for bankruptcy (the "Preference Period"). Plaintiff brought four claims: (i) avoidance of preferential transfers that were sent from the Debtors to each of the Defendants during the Preference Period pursuant to 11 U.S.C. § 547; (ii) avoidance of fraudulent transfers pursuant to 11 U.S.C. § 548(a)(1)(B); (iii) recovery of the avoided transfers pursuant to 11 U.S.C. § 550; and (iv) disallowance of

---

[1] Plaintiff and Defendants filed substantially identical briefs in each of the cases. *See* Appellant's Brief, Appellee's Brief and Appellant's Reply Brief, *Ryniker, et al. v. Bravo Fabrics, et al.*, No. 22-cv-00903, ECF Nos. 7, 8, 9; Appellant's Brief, Appellee's Brief and Appellant's Reply Brief, *Ryniker v. P. Kaufmann, Inc.*, No. 22-cv-00905, ECF Nos. 7, 8, 9; Appellant's Brief, Appellee's Brief and Appellant's Reply Brief, *Ryniker, et al. v. Swavelle / Mill Creek Fabrics, Inc., et al.*, No. 22-cv-00916, ECF Nos. 7, 8, 9. Unless otherwise specified, the Court will refer to the briefing filed in *Ryniker, et al. v. Bravo Fabrics, et al.*, No. 22-cv-00903.

Defendants' claims filed in the Debtors' Chapter 11 bankruptcy case pursuant to 11 U.S.C. § 502(d),(j). *See* ECF No. 7 at 10; ECF No. 7-1 at A005-A008.

On August 31, 2021, Defendants filed their motions for summary judgment seeking dismissal of all of the counts. *See* 22-cv-00903, ECF No. 7-1 at A023-035; 22-cv-00905, ECF No. 7-1 at A012-026; 22-cv-00916, ECF No. 7-1 at A023-035. In their motions, Defendants argued, *inter alia*, that they were (i) entitled to an ordinary course of business defense with respect to payments made during the Preference Period; (ii) that any remaining payments not protected by an ordinary course of business defense were fully protected by the new value defense; and (iii) that Plaintiff's fraudulent conveyance claims fail because of admissions made by Plaintiff in responses to Defendants' requests for admission served during discovery. *See* ECF No. 8 at 6-8. On September 30, 2021, Plaintiff filed a cross-motion for summary judgment. *See* 22-cv-00903, ECF No. 7-1 at A120-52; 22-cv-00905, ECF No. 7-1 at A121-52; 22-cv-00916, ECF No. 7-1 at A142-72. On December 1, 2021, the Bankruptcy Court held argument on the motions and subsequently requested that both parties file supplemental briefs discussing the ordinary course of business defense and the proper application of tests used to consider the ordinary course of business defense. *See* ECF No. 7-1 at A527. On February 3, 2022, the Bankruptcy Court issued the Bankruptcy Order. *Id.* at A526-37.[2]

---

[2] The Bankruptcy Order dismissed all the claims asserted in Plaintiff's complaint, *see* ECF No. 7-1 at A537, including Plaintiff's claims to recover the avoided transfers and to disallow Defendants' claims in the Debtors' Chapter 11 bankruptcy case. *See id.* at A007-08. Defendants assert that the Bankruptcy Court dismissed these claims because they were "dependent on the success" of Plaintiff's preferential and fraudulent transfer claims, *see* ECF No. 8 at 5, and Plaintiff does not allege otherwise. *See* ECF Nos. 7, 9. The Court agrees with Defendants. The statute authorizing Plaintiff's transfer recovery claim cites preferential and fraudulent transfers as bases for such recovery, and Plaintiff has identified no other basis. *See* 11 U.S.C. § 550(a) (citing 11 U.S.C. §§ 547, 548); ECF No. 7-1 at A007-08. The same applies to the statute authorizing Plaintiff's claim to disallow Defendants' claims in the Debtors' bankruptcy case. *See* 11 U.S.C. § 502(d) (citing 11 U.S.C. §§ 547, 548); ECF No. 7-1 at A008.

## **STANDARD OF REVIEW**

District courts have appellate jurisdiction over "final judgments, orders, and decrees" entered in bankruptcy court. 28 U.S.C. § 158(a). On appeal, a district court reviews a bankruptcy court's findings of fact for clear error and its legal conclusions *de novo*. *See In re Pinnock*, 833 F. App'x 498, 501 (2d Cir. 2020) (engaging in *de novo* review of the district court's review of a bankruptcy court decision and noting that the Second Circuit "appl[ies] the same standard of review employed by the district court to the decision of the bankruptcy court") (internal quotations and citation omitted); *In re Windstream Holdings Inc.*, 614 B.R. 441, 449 (S.D.N.Y. 2020) ("When reviewing for clear error, [the Court] may reverse only if [it is] left with the definite and firm conviction that a mistake has been committed.") (citation omitted).

A bankruptcy court's decision to grant summary judgment based upon undisputed facts is reviewed *de novo*. *See In re Treco*, 240 F. 3d 148, 155 (2d Cir. 2001) ("[W]ith respect to the grant of partial summary judgment, the posture in which this appeal reaches us, we review *de novo* whether, viewing the record in the light most favorable to the non-movant . . . any genuine and disputed issue of material fact underlies the bankruptcy court's decision."); *Townsend v. Ganci*, 566 B.R. 129, 133 (E.D.N.Y. 2017) (citing *In re Treco* at 155). Under Bankruptcy Rule 9005, if a claimed error of the Bankruptcy Court is harmless it is disregarded. *See* Fed. R. Bankr. P. 9005 ("Rule 61 of [the Federal Rules of Civil Procedure] applies in cases under the Code."); Fed. R. Civ. P. 61 ("Unless justice requires otherwise, no error . . . by the court . . . is ground for . . . vacating, modifying, or otherwise disturbing a judgment or order"). A lack of *specific* findings in support of a grant of summary judgment can be harmless error unless the appealing party's substantial rights are affected. *See In re Moorhouse*, No. 13-cv-372-A, 2013 WL 6825653, at *2 (W.D.N.Y. Dec. 20, 2013).

## DISCUSSION

Plaintiff's appeal centers around the Bankruptcy's Court's determination that Defendants' payments during the Preference Period were within the parties' ordinary course of business. "The subjective ordinary-course defense asks whether the payments the debtor made to the creditor *during* the preference period are consistent with the parties' practice *before* the preference period." *See Unsecured Creditors Comm. of Sparrer Sausage Co. v. Jason's Foods, Inc. (In re Sparrer Sausage Co.)*, 826 F.3d 388, 393 (7th Cir. 2016). The inquiry is not governed by a specific test, but generally involves using the debtor's payment history to calculate a baseline for the companies' dealings and then comparing preference period payments to that baseline to see if they differ substantially. *Id.* at 395. Bankruptcy courts typically calculate the baseline payment practice between a creditor and debtor in one of two ways: the Average Lateness Test or the Total Range Test. *Id.*; ECF No. 7-1 at A529. The Bankruptcy Court has the *sole* discretion to determine which test or methodology to apply when analyzing the payments during the period. *See In re Sparrer Sausage Co.,* 826 F.3d at 395. As requested by the Bankruptcy Court, the parties submitted briefing addressing the appropriate test regarding the ordinary course of business defense as well as the merits of the new value defense. *Id.* at A527. Defendants in each adversary proceeding chose the Average Lateness Test. Plaintiff chose the Total Range Test arguing that this "provides a more complete picture of the relationship between each of the Defendants and Debtors than the average lateness test." *Id.* at A530-31. Plaintiff argued that using the Average Lateness Test was not appropriate because of "wild variations in the Baseline Period for each case that are not present in the preference periods." *Id.* at A531 (internal quotations omitted). After considering the parties' arguments as well as the supplemental briefing, the Bankruptcy Court determined that all of the payments made during

6

the Preference Period were within the parties' ordinary course of business under both the Average Lateness Test and the Total Range Test.  *See id.*

Plaintiff challenges the Bankruptcy Order by raising a host of purported legal errors made by the Bankruptcy Court.  Plaintiff asserts that the Bankruptcy Court: (i) erred by attaching too little or too much weight to certain pieces of evidence; (ii) failed to consider certain of Plaintiff's arguments and in doing so; and (iii) erroneously relied on certain factors that are insufficient to grant the ordinary course of business defense.  The Court disagrees and addresses each of Plaintiff's arguments in turn.

### A.  The Average Lateness Test

The Bankruptcy Code authorizes bankruptcy trustees to "avoid any transfer of an interest of the debtor in property."  *See* 11 U.S.C. § 547(b).  However, there are exceptions:  Section 547(c)(2) of the Bankruptcy Code provides that a trustee may not avoid a transfer to the extent it was made in the ordinary course of business.  *See* 11 U.S.C. § 547(c)(2).  The ordinary course of business defense protects "recurring, customary credit transactions that are incurred and paid in the ordinary course of business of the debtor and the debtor's transferee."  *In re Quebecor World (USA), Inc.*, 491 B.R. 379, 385 (Bankr. S.D.N.Y. Apr. 23, 2013) (internal quotation marks omitted).

Bankruptcy courts examine several factors to determine whether a transfer made in the ordinary course of business satisfies the requirements of 11 U.S.C. § 547(c)(2).  One of those factors is the consistency of the business transactions between the debtor and creditor.  One tool to evaluate that consistency is the Average Lateness Test.  *See, e.g.*, *In re M. Fabrikant*, Case No. 06-12737, Adv. No. 08-1690, 2010 WL 4622449, at *3 (Bankr. S.D.N.Y. Nov. 4, 2010)

7

(considering Average Lateness Test) (citation omitted) (footnote omitted); *In re Sparrer Sausage Co.*, 826 F.3d at 395 (same) (citation omitted); *In re Quebecor*, 491 B.R. at 386 (same).

Plaintiff argues that the Bankruptcy Court erred by finding that the Average Lateness Test established an ordinary course of business defense. Plaintiff further contends that the Bankruptcy Court failed to address Plaintiff's substantive arguments and legal authority that the Average Lateness Test was inapplicable given the alleged outlier transfers which skewed the analysis. *See* ECF No. 7 at 5-7, 26-34. The Court sees no reason to disturb the Bankruptcy Court's decision to use the Average Lateness Test rather than the Total Range Test, notwithstanding Plaintiff's contention that the latter test "provides a more complete picture of the relationship between each of the Defendants and Debtors." ECF No. 7-1 at A530. Rather, it is apparent that the Bankruptcy Court thoroughly examined whether the use of the Average Lateness Test was appropriate before deciding to adopt it. *See* ECF 7-1 at A532-33 ("The Court has examined applicable case law regarding this test along with the general course of conduct between the parties during the Baseline Period and the preference period."). The Bankruptcy Court considered the alleged "outliers" against acceptable averages in other cases and concluded they were "completely in character based on the parties' prior payment history." *Id.* at A533. As explained previously, the decision to apply the Average Lateness Test over any other test rests within the Bankruptcy Court's sole discretion. *See In re Sparrer Sausage Co.,* 826 F.3d at 395. In fact, courts have found that the Average Lateness Test "*better* compensates for outlier payments during the historical period." *Id.* Here, the results of the average lateness test were as follows:

- Adversary Proceeding No. 21-8040 (22-cv-00905): Average lateness during the Baseline Period is 40.55 days. Average lateness during the Preference Period is 36.71 days. The difference is less than four days.

8

- Adversary Proceeding No. 20-8133 (22-cv-000916): Average lateness during the Baseline Period is 39.33 days. Average lateness during the Preference Period is 46.2 days. The difference is less than seven days.

- Adversary Proceeding No. 20-8125 (22-cv-00903): Average lateness during the Baseline Period is 47.57 days. Average lateness during the Preference Period is 45.2 days. The difference is less than three days.

ECF No. 7-1 at A532.

The Bankruptcy Court found that these averages were within an acceptable range and this Court agrees. *See In re Sparrer Sausage Co.*, 826 F.3d at 396 (five-day change from 22 historic average days to pay to 27-day average in the preference period was not "substantial enough to take any of the preference-period payments outside the ordinary course"); *Lovett v. St. Johnsbury Trucking*, 931 F.2d 494, 498 (8th Cir. 1991) (payments were ordinary where they were paid 52 days on average compared to historical average of 62); *In re NewPage Corp.*, Case No. 11-12804, Adv. No. 13-52520, 2016 WL 5787237, at *4-5 (Bankr. D. Del. Sept. 30, 2016) (payments with nine-day difference between preference period and historical period averages were ordinary); *In re Conex Holdings, LLC*, 522 B.R. 480, 490 (Bankr. D. Del. 2014) (difference in average days to pay of seven is not "problematic [and does not] take the preferential transfers outside of the normal course of dealings between the [debtor and the defendant]"); *In re Lan Yik Foods Corp.*, 185 B.R. 103, 113 (Bankr. E.D.N.Y. 1995) (payments were ordinary where they were paid 110 days on average compared to historical average of 89).

Plaintiff suggests that their charts, Chart 1 and Chart 2, show that there is no meaningful baseline for the preference payments to be consistent with and as such, the Average Lateness Test is unreliable. *See* 22-cv-00903, ECF No. 7 at 17-18, 31; 22-cv-00905, ECF No. 7 at 17-18, 28-29; 22-cv-00916, ECF No. 7 at 16-17, 29-30. However, this Court agrees with the Bankruptcy Court, *see* ECF No. 7-1 at A533, that the charts show that the payments made during

9

the Preference Period fall within an acceptable range: Chart 1 shows that the payments made during the Preference Period sit between: (i) 26 to 65 days for Defendants Bravo Fabrics and Rosenthal & Rosenthal, Inc.; (ii) 36 to 60 days for Defendants Swavelle / Mill Creek Fabrics, Inc.; and (iii) over 94% of the payments occurred between 31 to 45 days for Defendant P. Kaufmann, Inc. and Rosenthal & Rosenthal, Inc., with payments by all Defendants occurring both before and after, which suggests that the payments made during the Preference Period occurred in the ordinary course of business. *See* 22-cv-00903, ECF No. 7 at 17; 22-cv-00905, ECF No. 7 at 17; 22-cv-00916, ECF No. 7 at 17. Chart 2 shows that the payments made during the Preference Period occurred in a tight cluster around the historic average. *Id*. at 18. The baseline reflects the payment practice between the creditor and debtor. The alleged "inconsistencies" in the baseline are in and of themselves reflective of the payment practices between the parties and further suggest that the payments made during the Preference Period were made in the ordinary course of business. "The starting point—and often ending point— involves consideration of the average time of payment after issuance of the invoice during the pre-preference and post-preference periods. . . ." *In re M. Fabrikant*, 2010 WL 4622449, at *3. Accordingly, the Bankruptcy Court's analysis could have ended there.

### B. The Bucketing Test

Even if this Court were to accept Plaintiff's contention that the Average Lateness Test is unreliable, the Bankruptcy Court also considered a refined version of the Total Range Test, Plaintiff's preferred methodology, known as a bucketing analysis ("Bucketing Test"). *See* ECF No. 7-1 at A533-34. "If the differences in averages are material or the averages are skewed by outliers, the Court may utilize a total range analysis or to further refine the test by applying a bucketing analysis." ECF No. 7-1 at A529. "Under the bucketing analysis, the Court reviews

the payments made during the baseline period and groups them into buckets by age, then applies an appropriately sized bucket to the preference period payments to determine what is ordinary and what is not . . . . A range from the Baseline Period that captures around 80% of the payments would be an appropriate[ly] sized bucket." *Id.* The Bankruptcy Court concluded that "a bucketing analysis encompassing 82% of the payments made in the Baseline Periods for each of the cases would capture all of the preference period payments in Adversary Proceeding Nos. 20-8125 and 20-8133, and all but one payment in the amount of $1,937.03 in Adversary Proceeding No. 21-8040." *Id.* at A534. Thus, the Bankruptcy Court found that under the Bucketing Test, payments during the Preference Period were made in the ordinary course of business.

      Plaintiff takes issue with the fact that the Bankruptcy Court allegedly did not sufficiently specify which buckets it used and "arbitrarily selected [broad] ranges." *See* ECF No. 7 at 36-41. The Court disagrees. In its December 2, 2021, Order adjourning the Defendants' motions for summary judgment and requesting supplemental briefing, the Bankruptcy Court explained that a bucketing analysis compares the amount of invoices from the historical period and the preference period. *See* ECF No. 7-1 at A500. Citing relevant case law, the Bankruptcy Court further explained that it cannot create its buckets by grouping the payments made during the Preference Period, as Plaintiff would have preferred, because it "creates artificially narrow groups." *Id.* at A500-01. "The correct application of bucketing in the adversary proceedings at issue would appear to require choosing a range from the historical period that captures at least 80% of the payments." *Id.* at A502. The Bankruptcy Court then considered a range that captured 82% of the payments. Such a range removes outliers from both ends of the spectrum (both earlier and later payments) accounting for payments that may skew the results. The 82% range is not out of

11

the ordinary: several courts have found similar ranges to be appropriate when considering whether preference payments were made in the ordinary course of business under the Bucketing Test. *See e.g.*, *In re Sparrer Sausage Co.*, 826 F.3d at 398 (finding that 64% was too narrow a range and a range capturing 88% of the payments would have been more appropriate); *In re Quebecor,* 491 B.R. at 388 (finding that 88% of the payments during the historical period were made between 11 and 40 days after receipt of an invoice and choosing a range of up to 45 days from the invoice date as ordinary course); *In re T.B. Home Sewing Enterprises, Inc.*, 173 B.R. 782, 788-89 (Bankr. N.D. Ga. 1993) (finding that 86% of the invoices were paid outside the 60-day credit term and concluding that preference period payments were made within the baseline of late payments). While the Bankruptcy Court was under no obligation to consider a second test, this Court also finds that under an alternative Bucketing Test, the payments made during the Preference Period fall within an acceptable range and accordingly, were made in the ordinary course of business.

The Bankruptcy Court did not rely on one factor or one piece of evidence in isolation in determining that the transfers were made in the ordinary course of business, but instead correctly concluded that the factors and evidence as a whole weighed in favor of such a finding. Accordingly, the Bankruptcy Court did not err in finding that the transfers in question were made in the ordinary course of business.

### C. Dismissal of Fraudulent Transfer Claims

Finally, Plaintiff challenges the Bankruptcy Court's decision to dismiss its fraudulent transfer claims pursuant to 11 U.S.C. § 548(a)(1)(B). *See* ECF No. 7 at 5-8. Plaintiff argues that the Bankruptcy Court summarily dismissed his claims "without any citation to law or evidence." *Id.* at 41. In its decision, however, the Bankruptcy Court states that "since the Trustee has

established a *prima facie* case regarding the preference claims, it appears that each of the transfers were made on account of antecedent debt. There would be no basis for a constructive fraudulent conveyance claim because adequate value was received by the Debtors." ECF No. 7-1 at A534. The Bankruptcy Court found that there was no genuine dispute of material fact: each of the transfers (or payments) was made on account of antecedent debt and was fully satisfied as admitted by Plaintiff in his responses to Defendants' requests for admission. *See* 22-cv-00903, ECF No. 7-1 at A365-68; 22-cv-00905, ECF No. 7-1 at A358-62; 22-cv-00916, ECF No. 7-1 at A385-89; *see also Coach, Inc. v. Horizon Trading USA Inc.*, 908 F. Supp. 2d 426, 432-33 (S.D.N.Y. 2012) (finding that legal conclusions may logically follow from facts as admitted). In other words, because the Debtors received "reasonable equivalent value," there can be no constructive fraudulent conveyance claim. 11 U.S.C. § 548(a)(1)(B). Courts have held that "[t]he value received by a debtor does not need to be a penny for penny exchange but can be roughly the value of the transfer made." *In re Waterford Wedgwood USA, Inc.*, 500 B.R. 371, 381 (S.D.N.Y. 2013) (internal quotation marks and citation omitted). Here, Plaintiff received adequate value and all invoices during the Preference Period were paid on account of antecedent debts. It is clear that the Bankruptcy Court found no basis to support any claim of constructive fraudulent conveyance. This Court does not see it differently and is therefore not persuaded that there is any genuine and disputed issue of material fact casting doubt on the Bankruptcy Court's decision to dismiss the fraudulent conveyance claims.[3]

---

[3] Although the Court affirms the Bankruptcy Court's decision to dismiss Plaintiff's fraudulent conveyance claims on the basis that he received adequate value, it is worth noting that Plaintiff did not defend these claims in his opposition to Defendants' motions for summary judgment, wherein Defendants sought dismissal of the fraudulent conveyance claims. *See* 22-cv-00903, ECF No. 7-1 at A036; 22-cv-00905, ECF No. 7-1 at A025; 22-cv-00916, ECF No. 7-1 at A034. Plaintiff failed to address this argument in his opposition papers. *See* 22-cv-00903, ECF No. 7-1 at A120-61; 22-cv-00905, ECF No. 7-1 at A121-52; 22-cv-00916, ECF No. 7-1 at A142-72.

## **CONCLUSION**

The Court has considered all of the arguments of the parties. For the reasons explained above, the judgment of the Bankruptcy Court is AFFIRMED. The Clerk is directed to close these cases.

SO ORDERED.

/s/ Hector Gonzalez
HECTOR GONZALEZ
United States District Judge

Dated: Brooklyn, New York
August 10, 2022

---

Plaintiff's failure to defend his claims results in waiver. *See Triodetic Inc. v. Statue of Liberty IV, LLC*, 582 Fed. Appx. 39, 40 (2d. Cir. 2014) (finding that plaintiff waived arguments that he failed to raise in his opposition to defendants' motion for summary judgment). The Bankruptcy Court could have dismissed Plaintiff's fraudulent conveyance claims on that basis alone.